IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NANCY MARTIN, et al., | : |
| | :    Case No. C2-89-362 |
|     Plaintiffs, | : |
| | : |
| vs. | :    Judge Edmund A. Sargus, Jr. |
| | : |
| ROBERT TAFT, et al., | :    Magistrate Judge Norah McCann King |
| | : |
|     Defendants. | : |

### OPINION AND ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON MOTIONS TO DECERTIFY CLASS AND MOTION TO DISQUALIFY COUNSEL

This is a class action case arising under Title II of the Americans with Disabilities Act, the Rehabilitation Act, the Developmental Disabilities Act and the Civil Rights Act. Plaintiffs and the Plaintiff Class are mentally retarded or severely developmentally disabled citizens of the State of Ohio. They live or have lived in institutions licensed or run by the State of Ohio. By previous Opinion and Order, the Court certified the following class:

> "[A]ll mentally retarded or developmentally disabled Ohioans who are, or will be, in need of community housing and services which are normalized, home-like and integrated, and a subclass who, in addition to being members of the class, are, or will be, Medicaid recipients."

(Opinion and Order, Feb. 5, 1990 (Smith, J.) (Doc. #46))

The claims at issue in this case are largely based on the integration provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the United States Supreme Court decision of *Olmstead v. L.C.*, 527 U.S. 581 (1999). In *Olmstead*, the Supreme Court held that maintaining placement of an individual with a disability in a segregated facility when that individual could be and chooses to be serviced in a more integrated setting is unlawful discrimination under

Title II. The claims before this Court are not now and have never been based on federal Medicaid law regarding Intermediate Care Facilities for the Mentally Retarded ("ICF/MR"). Plaintiffs and the Plaintiff Class have not sought elimination or creation of a particular program, but instead have sought to enforce the Class' right under federal law to have options regarding where and how residential services are provided. Neither these Plaintiffs nor the Class have ever sought to make individualized placement decisions for the disabled Class or to bind the Class members to community-integrated programs. These life-altering determinations can only be made by the guardians and family of the Class members, with the expert assistance and approval of trained physicians.

On July 7, 2004, after extensive negotiations and years of protracted litigation, the parties presented a Joint Motion for Approval of Settlement. The proposed settlement and corresponding consent decree contained reasoned, principled and measured commitments that each party agreed to undertake for the benefit of the disabled Class. Further, although Defendants have never opposed the general concept of community-based services and have, in fact, created such programs over the years, the terms of the consent decree were particularly noteworthy given the severe budget restrictions that State of Ohio faced at the time it consummated a settlement.

In response to the proposed compromise, ICF/MR provider-advocacy groups, such as the Ohio Provider Resource Association, launched a campaign designed to rally parents and guardians of Class members who reside in ICF/MRs to oppose the proposed settlement. These ICF/MR advocacy groups organized their efforts and presented this Court with thousands of form "objections." Several of these groups seriously misstated the intent of the parties in entering into the proposed consent decree and publically contended that all ICF/MR programs would be eliminated

under the proposed consent decree without an appropriate or comparable substitute.

Based on these misrepresentations, several members of the Class attempted to defect, and splintered groups of objectors began forming for the purpose of sabotaging the settlement. The objectors thereafter suggested that divisions and antagonisms existed within the certified Class and therefore filed motions to decertify and motions to disqualify Class counsel. The Court postponed and ultimately cancelled the fairness hearing, and the parties withdrew their Joint Motion to Approve the Settlement as well as the proposed consent decree.

In the interim, the Court appointed a Special Master and charged him with engaging the parties in compromise negotiations and, failing settlement, with recommending disposition of the several motions to decertify the Class and motions to remove Class counsel. Settlement negotiations came to an impasse. The Special Master therefore considered the pending motions and arrived at the following conclusions:

> I. The Elements Necessary to Certify the Class still exist, and therefore, Decertification is not Proper;
> II. The Motions to Decertify the Class are Moot Because the Plaintiff Class has Withdrawn Its Motion to Approve Settlement;
> III. Some of the Objectors Do Not have Standing to Move this Court to Decertify the Class; and
> IV. Plaintiff Class' Counsel Is able to Adequately and Fairly Represent the Plaintiff Class.

(Special Master Report and Recommendations ("R&R"), at p. 2.)

The Court permitted any party to object, move to adopt or modify the Special Master's R&R. The Joel Martin, Heary/Ciocco and Paul Peterson objectors responded. Amici Ohio Health Care Association and Ohio Provider Resource Association also responded to the R&R. None of these responses was identified, nor can they be characterized, as an objection to the R&R.

## II.

Federal Rule of Civil Procedure 53(g) provides as follows with respect to the Court's action on a Special Master's Report and Recommendations:

> (1) Action. In acting on a master's order, report, or recommendations, the court must afford an opportunity to be heard and may receive evidence, and may: adopt or affirm; modify; wholly or partly reject or reverse; or resubmit to the master with instructions.
>
> . . .
>
> (3) Fact Findings. The court must decide *de novo* all objections to findings of fact made or recommended by a master . . . .
>
> (4) Legal Conclusions. The court must decide de novo all objections to conclusions of law made or recommended by a master.
>
> (5) Procedural Matters. Unless the order of appointment establishes a different standard of review, the court may set aside a master's ruling on a procedural matter only for an abuse of discretion.

In this case, to the extent the Special Master's Recommendations related to procedural matters regarding certification of the class action and the adequacy of class counsel, these determinations are reviewed for an abuse of discretion. Moreover, no party has objected to the R&R, which suggests that the conclusions contained therein are subject to substantial deference.

## III.

Without objection from the parties, the Special Master's R&R is **ADOPTED** in its entirety. The Plaintiff Class should not be decertified because it continues to meet the requirements of Federal Rule of Civil Procedure 23. The motions to decertify are moot because the purported conflict of interest that allegedly resulted from the proposed consent decree is no longer implicated because the underlying settlement agreement has been withdrawn.

Although implicit in the definition of the Class, the membership consists of individuals who

are, or will be in need of community housing and services. If an individual with mental retardation or other developmental disabilities is not, or will not be, in need of community housing and services, they are not members of the Class, lack standing to pursue a judicial resolution, and will not be bound by any decision of this Court.[1] Under the Class definition, Plaintiff Objectors, in particular, the Joel Martin, Shawna Klein, Donna Amato (Hearey-Ciocco), Paul Peterson and Thomas J. Grady Objectors, are not medically qualified or in need of integrated community services. As more fully explained in the Special Master's R&R:

> To determine whether an individual is qualified, the court in *Olmstead* held that a state, "generally may rely on the reasonable assessments of its own professionals in determining whether an individual meets the 'essential eligibility requirements' for habilitation in a community-based program. Absent such qualification, it would be inappropriate to remove a patient from the more restrictive setting." *Olmstead*, 527 U.S. at 602. In the case *sub judice*, members of the Plaintiff Class must be qualified to be "in need of" community housing. An individual is qualified for community housing only if a professional has assessed this individual and approved community housing as a viable option for this individual. Therefore, only those individuals for whom community housing has been approved as a viable option are "in need of" this service.
>
> Moreover, the court in *Olmstead* had held that disabled individuals have the right to decline community-based treatment. *Id.* at 602. If an individual with mental retardation has declined the service, he or she, by admission, does not need the

---

[1] The Court, however, declines Plaintiffs' present invitation to modify the definition of the certified Class such that the membership is limited to those individuals with mental retardation or other developmental disability who are in need of residential services *and would choose* to receive those services in an integrated community setting. (Pls' Reply Memo to Objector and Amici Responses to the Special Master's R&R, at p. 2 (emphasis in original).)

Rule 23 does give the District Court broad discretion to modify the definition of the class after certification. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment.") At this juncture, however, no party has moved to modify the definition of the Class and the request technically has not been fully addressed by the Defendants. Further, the Special Master did not formally arrive at this conclusion in his R&R. While the Court notes that such modification could be warranted, it declines to address the matter herein because the issue is not yet fully before the Court.

service. Therefore, in the case sub judice, if an individual with mental retardation does not wish to participate in community housing, then he or she is not "in need of" this service. Under *Olmstead*, read in accordance with the Order Confirming Certification, individuals with mental retardation that have either 1) been assessed as unqualified by a professional to participate in community housing, or 2) declined community housing, are not "in need of" community housing and are therefore not part of the Plaintiff Class.

Therefore, the Joel Martin, Shawna Klein, Donna Amato (Hearey-Ciocco), Paul Peterson and Thomas J. Grady Objectors do not have standing to seek decertification of the Class or to object to the proposed settlement.

The Court notes, as both the State Defendants and Plaintiffs/Plaintiff Class have observed, that the Hearey/Ciocco objectors and the Ohio Health Care Association Amicus suggest a limit on the scope of future compromise discussions by prohibiting language in any settlement agreement that would cause the elimination of ICF/MR services. These objectors, however, fail to provide a legal basis for imposing these limitations. Moreover, the State of Ohio has an explicit and long-term objective to redesign the method by which Medicaid residential support services are offered based on principles of consumer self-determination and has implemented pilot programs and legislation to study whether ICF/MR eligible individuals should be provided with waivers to pay for services. The Court will not, in the abstract, place limits on the parties' ability to negotiate on matters related to the equitable remedies at stake here.

Finally, the Court concurs in that portion of the Special Master's R&R in which he recommended denial of the motions to disqualify or remove Plaintiffs' counsel. In particular, the Special Master found that "[Class] counsel is qualified, experienced and able to conduct the litigation." (Special Master's R&R, at p. 10.) Counsel for Plaintiffs and the Class have unflaggingly fought for their clients' rights for more than fifteen years in an effort to obtain choice for individuals

who may qualify for less restrictive, integrated community settings, as opposed to services in segregated institutions. As aptly stated by the Joel Martin Objectors, who filed the chief motion to remove Class counsel, "[o]ver the last 15 years, the amount and diversity of services for mentally retarded individuals in the community has expanded significantly, no doubt in some definite but unquantifiable amount due to the impetus and work of OLRS and the decisions of this Court in this Case." (Joel Martin Objectors, Motion to Remove Counsel, at p.16.) This Court agrees.

Again, the Report and Recommendations of the Special Master is hereby **ADOPTED**. The motions to decertify the Class and motions to remove counsel are **DENIED**.

### IV.

This matter is scheduled for a status conference on December 20, 2005. Because the Court has denied the motions to decertify the Class and to disqualify counsel, the Class is now and remains a cohesive group represented by able counsel. Pursuant to Federal Rule of Civil Procedure 16(a), for purposes case management and expediting disposition of the action, only counsel for the parties (Plaintiffs/Plaintiff Class and Defendants), shall attend the pretrial conference. The parties shall be prepared to discuss all subjects within the ambit of Fed. R. Civ. P. 16(c), including such matters as scheduling dates for a final discovery cut-off and trial in this case.

**IT IS SO ORDERED.**

11-28-2005
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**